USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/13/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
NEW YORK DISTRICT COUNCIL OF       :
CARPENTERS PENSION FUND, et al.,   :
                                   :
            Plaintiffs,            :      06 Civ. 6377 (WHP)
                                   :
      -against-                    :      MEMORANDUM & ORDER
                                   :
PERIMETER INTERIORS, INC. and      :
SUSAN REIDY,                       :
                                   :
            Defendants.            :
----------------------------------X

WILLIAM H. PAULEY III, District Judge:

        Plaintiffs, trustees of the District Council of Carpenters Pension Fund and six related funds (collectively, the "Benefit Funds"), bring claims pursuant to the Employees Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 152 et seq., against Defendants Perimeter Interiors ("Perimeter") and its president, Susan Reidy ("Reidy"). The Benefit Funds seek to compel Perimeter to make contributions to employee benefit funds on behalf of its employees, and also seek money damages from Reidy. Plaintiffs move for summary judgment and Reidy moves for judgment on the pleadings. For the following reasons, Plaintiffs' motion for summary judgment is granted in part, and Reidy's motion for judgment on the pleadings is denied as moot.

## BACKGROUND

        The Benefit Funds are jointly-administered, multi-employer employee benefit plans under ERISA, 29 U.S.C. §§ 1002(1)-(3), 1132(d)(1). Perimeter is a carpentry business and

an employer pursuant to ERISA, 29 U.S.C. §§ 1002(5), 1145. (Plaintiffs' 56.1 Statement dated Aug. 15, 2008 ("Pl. 56.1 Stmt.") ¶ 7.) Reidy is Perimeter's president, its sole shareholder, and chief executive officer. (Pl. 56.1 Stmt. ¶ 8.) Reidy handles all payroll functions for Perimeter, schedules all work, has sole signature authority on Perimeter's bank accounts, and is the only individual with knowledge of Perimeter's operations. (Pl. 56.1 Stmt. ¶¶ 25-27.)

On December 10, 2001, Perimeter entered into an Independent Building Construction Agreement with the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America (the "Union") (the "Independent Agreement"). The Independent Agreement was effective from July 1, 2001 through June 30, 2006 and obligated Perimeter to remit fringe benefit contributions to the Benefit Funds for each hour worked by carpenters performing work covered under the agreement. (Pl. 56.1 Stmt. ¶ 9; Declaration of Phil Giudice dated Aug. 8, 2008 ("Giudice Decl.") ¶¶ 7-8, Ex. 3: Independent Agreement at 36.)

Contractors are required to notify the Union of all jobsites where union carpenters are employed. (Pl. 56.1 Stmt. ¶ 30.) The Union then dispatches a shop steward who is required to record the number of hours each carpenter works. (Pl. 56.1 Stmt. ¶ 30.) Perimeter was obliged to sign the weekly shop steward reports, which are used by the Benefit Funds to cross-check remittances. (Pl. 56.1 Stmt. ¶¶ 30-31.) Reidy knew that Perimeter was required to make accurate reports of the number of hours worked by its carpenter employees to the Benefit Funds because they were used to calculate fringe benefit contributions. (Pl. 56.1 Stmt. ¶¶ 28-29.)

Perimeter has two bank accounts—one with HSBC and another with the Bank of New York. (Pl. 56.1 Stmt. ¶ 38.) However, Perimeter also maintained a secret account at Country Bank (the "Secret Account"), which it used for illegitimate purposes. While Plaintiffs

assert that Perimeter maintained the Secret Account to avoid fringe benefit fund contributions, (Pl. 56.1 Stmt. ¶ 40), Defendants maintain that Perimeter used the account to evade taxes, and skim money, (Defendants' Response to Plaintiffs' 56.1 Statement dated Sept. 25, 2008 ("Def. 56.1 Stmt.") ¶ 40; Deposition Transcript of Gregory Polvere dated May 21, 2008 at 47:5-14).

In August 2005, the Benefit Funds conducted a forensic audit of Perimeter's books and records. (Declaration of Gregory J. Polvere dated Aug. 13, 2008 ("Polvere Decl.") ¶¶ 1, 5, 7.) After Defendants failed to produce any records regarding the Secret Account, Plaintiffs subpoenaed Country Bank. (Def. 56.1 Stmt. ¶ 52; Docket No. 35 (denying Defendants' motion to quash subpoenas).) The Benefit Funds' auditor found that Perimeter "failed to remit contributions required to be paid . . . for work performed by its covered employees for the period 2002-2005, and [was] delinquent and deficient in the principal amount of $1,610,551.75." (Polvere Decl. ¶ 51.)

The auditor found that Perimeter made payments to a non-union company, Speedy Enterprises Inc. ("Speedy"), from the Secret Account. (Polvere Decl. ¶ 33.) Speedy shares the same business address with Perimeter, and Reidy's husband is Speedy's president. (Pl. Ex. 10: Audit Report at 16.) Among other things, the auditor found that Perimeter and Speedy share twenty-three employees in common. (Audit Report at 17.) According to the auditor, such a relationship is known in the trades as "double breasting"— in which one union company conceals financial activity through a nominee non-union company. (Audit Report at 19.) One employee, who worked for Perimeter, declared that "[a]t some point, [he] started receiving checks from Speedy Enterprises," and that "[t]he work [he] did for Perimeter and Speedy was all carpentry work within New York City." (Declaration of Renard Nelson dated Aug. 11, 2008 ¶¶ 4, 6.)

3

Because Defendants failed to respond to Plaintiffs' discovery requests, this Court directed "Defendants [to] respond to Plaintiffs' document demands by March 28, 2008, or Defendants will be precluded from introducing those documents in any subsequent motion or at trial . . . ." (Order dated Mar. 5, 2008, Docket No. 38.) After Defendants' subsequent failure to respond, this Court granted "Plaintiffs' application to preclude Defendants from introducing any documents into evidence in any subsequent motion, hearing, or trial . . . ." (Order dated Apr. 4, 2008, Docket No. 40.) As a result, Defendants did not produce any documents showing what work was performed, or the number of hours spent performing covered work. (Pl. 56.1 Stmt. ¶ 14.)

Defendants also refused to allow Reidy to be deposed. Instead, the parties entered into a stipulation whereby Plaintiffs withdrew their deposition notice and Reidy invoked her Fifth Amendment privilege against self-incrimination to a list of questions. (Docket No. 44.)

While Defendants dispute the amount of damages owed, they do not dispute liability. (Pl. 56.1 Stmt. ¶ 35; Def. 56.1 Stmt. ¶ 35.) Indeed, counsel for Defendants conceded: "I'm not going to make a claim that there's no liability to the pension funds. The issue is what is the extent of the liability?" (Transcript of oral argument dated Oct. 24, 2008 at 8.)

## DISCUSSION

I. Plaintiffs' Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of demonstrating the

4

absence of any genuine dispute as to a material fact rests with the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Liberty Lobby, 477 U.S. at 255. However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 248 (quoting Fed. R. Civ. P. 56(e)).

A party's "reliance on the Fifth Amendment in civil cases may give rise to an adverse inference against the party claiming its benefits." S.E.C. v. Invest Better 2001, No. 01 Civ. 11427 (BSJ), 2005 WL 2385452, at *2 (S.D.N.Y. May 4, 2005) (citing Baxter v. Palmigiano, 425 U.S. 308, 318 (1976)). "[A] party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence, and the claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation." United States v. Certain Real Property and Premises Known As: 4003-4005 5th Ave., Brooklyn, NY, 55 F.3d 78, 83 (2d Cir. 1995) (internal citations omitted). However, "even assuming that a jury might draw such inferences, [the court is] required at summary judgment to draw all reasonable inferences in favor of the non-moving party." Stichting Ter Behartiging v. Schreiber, 407 F.3d 34, 55 (2d Cir. 2005).

### A. Liability Under ERISA

#### 1. Perimeter

Employers are obligated to make contributions to a multi-employer plan under the terms of the plan or the collectively bargained agreement. See 29 U.S.C. § 1145. The Audit

Report demonstrates that Perimeter failed to make required contributions to the Benefit Funds totaling $1,610,551.75, for the period January 1, 2002 through December 31, 2005.[1] In response, Defendants argue that Plaintiffs have insufficient evidence and rummage selectively through the auditor's deposition transcript. Defendants' lame assertions include that: (1) the auditor could not recall whether any of the approximately fifty companies he had audited in his career had employed solely carpenters; (2) the auditor assumed the individuals paid from the Country Bank Account were carpenters; (3) the auditor relied only on checks drawn on the Country Bank Account to conclude that checks endorsed to cash were used to pay carpenters "off the books"; and (4) the auditor made unsupported assumptions. Such quibbles are insufficient to "set forth specific facts showing that there is a genuine issue for trial," Liberty Lobby, 477 U.S. at 248 (quoting Fed. R. Civ. P. 56(e)), and more properly address the issue of damages.

Having refused to respond to Plaintiffs' discovery demands, Defendants cannot claim that the auditor had nothing to rely on. Reidy is the only individual with personal knowledge or information pertaining to the work of Perimeter's carpenters. That Reidy chose to assert the Fifth Amendment does not shield Defendants from liability, as Plaintiffs are entitled to an adverse inference in connection with much of the information they sought. Based on the Plaintiffs' Audit Report, and the adverse inferences drawn from Reidy's failure to respond to any questions, the Court concludes that Defendants' maintained the Secret Account to avoid their legal obligations to the Benefit Funds. Accordingly, Plaintiffs' motion for summary judgment as to Perimeter's ERISA liability is granted.

---

[1] Plaintiffs do not attach specific dates to Defendants' alleged liability, but rather reference the relevant time period as 2002-2005. The Court assumes Plaintiffs refer to the entire years in question.

2. Reidy

Generally, "an individual is not liable for corporate ERISA obligations solely by virtue of his role as officer, shareholder, or manager." Sasso v. Cervoni, 985 F.2d 49, 50 (2d Cir. 1993). However, "to the extent that a controlling corporate official defrauds or conspires to defraud a benefit fund of required contributions, the official is individually liable under Section 502 of ERISA, 29 U.S.C. § 1132." Leddy v. Standard Drywall, Inc., 875 F.2d 383, 388 (2d Cir. 1989). To determine whether a corporate official should be held personally liable for fraudulent conduct, courts engage in a two-step inquiry. See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo, 35 F.3d 29, 33 (2d Cir. 1994). First, the Court "examine[s] the officer's actual role in the company's affairs and relationship to the company's wrongdoing" to determine whether the individual is a "controlling corporate official." Lollo, 35 F.3d at 33. "Evidence that an individual possessed actual operational control over the affairs of the corporation and was involved [in] the fraud weighs in favor of holding that defendant personally liable." N.Y. City Dist. Council of Carpenters Pension Fund v. Quantum Constr., No. 06 Civ. 13150 (GEL)(JCF), 2008 WL 5159777, at *7 (S.D.N.Y. Dec. 9, 2008) (citations omitted). Second, the Court must determine whether Plaintiffs have established the common law elements of fraud, which include: (1) a material false representation or omission of an existing fact; (2) knowledge of its falsity; (3) intent to defraud; (4) reasonable reliance; and (5) damages. Lollo, 35 F.3d at 33; see also Finkel v. Frattarelli Bros. Inc., No. 05-CV-1551 (JFB)(AKT), 2008 WL 2483291, at *13 (E.D.N.Y. June 17, 2008).

Reidy is clearly a "controlling corporate official." She is Perimeter's president, sole shareholder, and chief executive officer. She performed all payroll functions for Perimeter, and is the only individual with personal knowledge of Perimeter's payment of its carpenter

7

employees. She had sole signature authority on Perimeter's bank accounts, and scheduled all the firm's carpenters.

Plaintiffs also establish the common law elements of fraud. Defendants admit that, "[a]t all times from 2002-2005, defendant Reidy intentionally and knowingly caused Perimeter to submit and/or communicate false reports and information to the plaintiff Benefit Funds or its authorized agents that deliberately omitted covered employees and/or underreported the number of hours Perimeter's carpenter employees worked, resulting in an unjustified windfall to defendant Reidy." (Pl. 56.1 Stmt. ¶ 35; Def. 56.1 Stmt. ¶ 35.) Reidy also knew that Perimeter was required to report the number of hours worked by its carpenter employees to the Benefit Funds and that the Benefit Funds relied upon Perimeter's reporting of hours worked in calculating fringe benefit contributions. Finally, the Audit Report demonstrates that Plaintiffs suffered damages.

### B. Damages Under ERISA

The Court refers this action to Magistrate Judge Francis for a damages inquest on Plaintiffs' ERISA claim. See Quantum Constr., 2008 WL 5159777, at *4 ("the corporate defendant and its principal . . . not only violated the terms of the collective bargaining agreement by failing to pay fringe benefits due to their employees, but did so through a systematic fraud perpetrated by [the principal], in which employees were paid off the books out of a separate checking account whose existence was never disclosed to the plaintiff funds or their auditors.").

### C. Liability Under Common Law Fraud

"A state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted." Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 288 (2d Cir. 1992), abrogated on other grounds, Gerosa v.

8

Savasta & Co., 329 F.3d 317, 322-23, 327-28 (2d Cir. 2003). "Where the existence of a pension plan is a critical factor in establishing liability under State law, the cause of action will be preempted." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139-40 (1990).

Without the existence of the ERISA-regulated employee benefit plan, Plaintiffs would have no claim under State law. Moreover, Plaintiffs' fraud claim is an alternative theory of recovery, as this Court has held that Reidy is individually liable under ERISA. Accordingly, Plaintiffs' motion for summary judgment on the common law fraud claim is denied, and that cause of action is dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment on its ERISA claim against Defendants Perimeter and Reidy is granted in part, and this action is referred to Magistrate Judge Francis for a damages inquest. Defendant Reidy's motion for judgment on the pleadings, dismissing Plaintiffs' common law fraud claim, is denied as moot.

Dated: February 13, 2009
       New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Joy Mele, Esq.
O'Dwyer & Bernstein, LLP
52 Duane Street
New York, NY 10007
*Counsel for Plaintiffs*

Terrence M. Randell, Esq.
Law Offices of Michael G. Dowd
112 Madison Avenue
New York, NY 10016
*Counsel for Defendants*